UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TOTAL SAFETY U.S., INC, ET AL., § § Plaintiffs. § § VS. § CIVIL ACTION NO. 4:19–CV–03836 § CODE RED SAFETY § & RENTAL, LLC, ET AL., § § Defendants. § | |

## AMENDED MEMORANDUM AND RECOMMENDATION

Before me is Defendant Justin Massengale's Motion for Partial Summary Judgment on Plaintiffs' Breach of Contract Claim. *See* Dkt. 53. After considering the motion, response, reply, and applicable law, I recommend that the Motion for Partial Summary Judgment be **GRANTED** with respect to Justin Massengale's ("Massengale") breach of contract claim based on the December 31, 2008 Employment Agreement.[1]

## BACKGROUND

Massengale began working for Sprint Safety, Inc. in 2005. Approximately three years later, on December 31, 2008, Sprint Safety and Massengale entered into an Employment Agreement. The Employment Agreement provided that Sprint Safety

---

[1] At the time Massengale filed the Motion for Partial Summary Judgment, the only breach of contract claim at issue in the Second Amended Complaint involved the December 31, 2008 Employment Agreement. Shortly after the briefing on the Motion for Partial Summary Judgment concluded, Plaintiffs filed a Third Amended Complaint, which asserted a breach of contract claim over both the Employment Agreement and a Unit Grant Agreement. The present Motion for Partial Summary Judgment only addresses the breach of contract claim under the Employment Agreement.

would employ Massengale on a full-time basis as a sales representative. The Employment Agreement also addressed various other employment-related issues such as base salary, bonus compensation, participation in an employee benefit plan, vacations, and non-competition obligations.

At issue in the present Motion for Partial Summary Judgment is the Employment Agreement's restrictive covenants governing Massengale's post-employment activities. Section 5(c) of the Employment Agreement contains one-year, post-employment non-competition and non-solicitation provisions. The non-competition provision provides as follows:

> (i) For the period beginning on [December 31, 2008] and ending one (1) year following the date of the Employee's termination from employment (the "Restricted Period"), the Employee will not engage in Competition in the Territory . . . .

Dkt. 53-3 at 4. "Competition" is defined as "to directly or indirectly, without the prior written consent of [Sprint Safety], form, acquire, finance, operate, control, advise, invest in or otherwise become engaged in or employed by a Competing Business." *Id.* at 7. "Territory" is defined as "a thirty (30) mile radius of Baytown metropolitan area and a one (1) mile radius of each customer to which Employee has provided services within the last year, even if said customers are outside the thirty (30) mile radius." *Id.*

The non-solicitation provision also restricts Massengale's activities for one year following the date of his termination from Sprint Safety:

> (ii) During the Restricted Period, the Employee will not directly or indirectly, and will not assist directly or indirectly any other Person to (A) hire or engage in any capacity any employee of any member of the Company Group (or any Person who was an employee of any

2

>member of the Company Group within twelve (12) months of the date such hiring or engagement occurs) or solicit or attempt to induce any employee of any members of the Company Group to discontinue such employment for the benefit of any other Person, (B) solicit or attempt to induce any customer of any member of the Company Group or independent contractor providing services to any member of the Company Group to terminate or diminish its relationship with them, or (C) seek to persuade any customer or supplier of any member of the Company Group (or any Person who was a customer or supplier of any member of the Company Group within twelve (12) months of the date such solicitation or encouragement commences or occurs, as the case may be) or prospective customer or supplier of any member of the Company Group to conduct any business or activities with any Competing Business.

*Id.* at 4. "Company Group" refers to "Sprint Holdings, LLC, and its direct and indirect Subsidiaries." *Id.* at 7.

Massengale's employment with Sprint Safety terminated on August 31, 2016. The very next day, Massengale began working for Tidal Tank, Inc., a company affiliated with Sprint Safety. Massengale left Tidal Tank on December 31, 2017, and went back to work at Sprint Safety from January 1, 2018, until his termination on June 30, 2019. Massengale did not sign a new employment agreement when he returned to Sprint Safety in 2018.

Although this lawsuit involves many claims and numerous parties, the current Motion for Partial Summary Judgment focuses solely on the breach of contract claim brought against Massengale. In short, Plaintiffs Sprint Safety, Total Safety U.S., Inc., and Total Safety On-Site Safety Services, Inc. claim that Massengale breached the one-year, post-employment restrictive covenants found in the Employment Agreement by working for purported competitors of Sprint Safety and soliciting Sprint Safety's

customers. Massengale seeks summary judgment on the breach of contract claim, arguing that, as a matter of law, any contractual, post-employment restrictive covenants have expired and no longer prevent him from competing against his former employer.

## LEGAL STANDARDS

**A.     SUMMARY JUDGMENT**

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd on behalf of Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). "A material fact is one that might affect the outcome of the suit under governing law, and a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (internal quotations marks and citations omitted).

"A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments LLC*, 914 F.3d 940, 946 (5th Cir. 2019) (internal quotation marks and citation omitted). In deciding a summary judgment motion, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor." *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 972 (5th Cir. 2019) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)) (brackets omitted).

B.   **CONTRACT INTERPRETATION**

Because the Motion for Partial Summary Judgment asks me to determine the meaning of the Employment Agreement, I think it is useful to provide a short refresher on the basic canons of contract interpretation.

A court's "primary objective" in construing a contract is "to ascertain and give effect to the parties' intent as expressed by the words they chose to effectuate their agreement." *In re Deepwater Horizon*, 470 S.W.3d 452, 464 (Tex. 2015). This basic principle advances Texas's "strong public policy in favor of preserving the freedom of contract" by allowing parties to "prescribe[] particular remedies or impose[] particular obligations" as they choose. *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 648–49 (Tex. 2007) (quotation marks and citation omitted).

As the Texas Supreme Court explained more than a century ago, "where the language is plain and unambiguous, courts must enforce the contract as made by the parties, and cannot make a new contract for them, nor change that which they have made under the guise of construction." *E. Tex. Fire Ins. Co. v. Kempner*, 27 S.W. 122, 122 (Tex. 1894). "A contract is unambiguous if it can be given a definite or certain legal meaning. On the other hand, if the contract is subject to two or more reasonable interpretations . . . the contract is ambiguous." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). "Courts interpreting unambiguous contracts are confined to the four corners of the document, and cannot look to extrinsic evidence to create an ambiguity." *Texas v. Am. Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006). Only where a contract is first determined to be ambiguous may a court consider the parties'

5

interpretations and admit extrinsic evidence. *See URI, Inc. v. Kleber Cty.*, 543 S.W.3d 755, 764 (Tex. 2018). "Whether a contract is ambiguous is a question of law." *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983).

## ANALYSIS

The Employment Agreement provides that the one-year, post-employment portions of Massengale's restrictive covenants begin to run on his "termination from employment." Dkt. 53-3 at 4. Based on this contractual language, Massengale contends that the one-year, post-employment restrictive covenants started to control on August 31, 2016, the date Sprint Safety terminated his employment. It logically follows, Massengale continues, that the Employment Agreement's restrictive covenants expired on September 1, 2017, one year following his termination from Sprint Safety. As a result, Massengale asks me to render summary judgment in his favor on the breach of contract claim, arguing that the Employment Agreement does not presently prevent him from competing against Plaintiffs or from soliciting any of Plaintiffs' customers.[2] In opposing summary judgment on the breach of contract claim, Plaintiffs advance four separate arguments. I will address them one by one.

**A.    IS THE EMPLOYMENT AGREEMENT AMBIGUOUS?**

First, Plaintiffs argue that, under the Employment Agreement, Massengale's "promotion" from Sprint Safety to Tidal Tank does not constitute a "termination from

---

[2] Massengale also contends that the Employment Agreement's non-solicitation provision is overbroad and unenforceable. Because I find that the one-year, post-employment restrictive covenants have expired and do not preclude Massengale from competing against his former employer, I need not address whether the non-solicitation provision is overbroad as a matter of law.

6

employment," triggering the start of the one-year, post-employment restrictive covenants. In making this argument, Plaintiffs contend that Massengale's "termination from employment" did not occur until he left the employment of the Sprint family of companies on June 30, 2019.

Plaintiffs' argument conveniently ignores the clear and unambiguous language in the Employment Agreement. The Employment Agreement plainly states that the one-year, post-employment obligations begin on the date of Massengale's "termination from employment." Dkt. 53-3 at 4. After reading the Employment Agreement, there is no doubt that Massengale's employer was Sprint Safety and that the only entity that could terminate Massengale from his employment was Sprint Safety. Indeed, the first page of the Employment Agreement expressly states that "the Employee will be employed . . . by the Company." *Id.* at 2. "Employee" refers to Massengale, and "Company" refers to Sprint Safety, not any other entity or family of entities. *See id.* Numerous other provisions of the Employment Agreement reinforce the inescapable conclusion that Massengale's termination from Sprint Safety, not a related entity, triggered the one-year restrictive covenants.

In my view, there is nothing ambiguous about the Employment Agreement. When a contract uses unambiguous language, I must "construe it as a matter of law and enforce it as written." *Deepwater Horizon*, 470 S.W.3d at 464. *See also El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 811 (Tex. 2012) ("We have an obligation to construe a contract by the language contained in the document."). Accordingly, the post-employment restrictive covenants started to run on the date of Massengale's

7

termination of employment from Sprint Safety on August 31, 2016, and expired one year later on September 1, 2017. As a result, these post-employment restrictions no longer have any force or effect.

Roughly a decade ago, a state appellate court in Washington addressed a similar contractual provision and reached the same result as I do here. *See Fluke Corp. v. Milwaukee Elec. Tool Corp.*, 148 Wash. App. 1041 (2009). In *Fluke*, the employee agreed to be bound by non-competition and non-solicitation provisions for the 12-month period "following [his] employment with the Company." *Id.* at *1. The agreement defined the term "Company" as "[t]he Jacobs Chuck Manufacturing Company, Clemson, SC, a division of Danaher Corporation." *Id.* at *4. The employee left the employment of Jacobs Chuck Manufacturing Company and joined Fluke Corporation, another Danaher Corporation subsidiary. *See id.* at *2. Just as in this case, the central dispute was whether the employee's transfer from one subsidiary to another constituted a "termination" under the agreement for purposes of the non-competition and non-solicitation provisions. After carefully reviewing the contractual language, the Washington appellate court held that the employee's "transfer to Fluke was a termination for purposes of the noncompetition provisions of the Agreement." *Id.* at *4. The same analysis applies to the Employment Agreement at issue here.

Plaintiffs take the position that the language in Section 7 of the Employment Agreement should be interpreted in such a way that the post-employment competitive restrictions in Section 5 did not start until Massengale stopped working for all entities affiliated or connected with Sprint Safety. Section 7(c) provides that if Massengale is

8

terminated, he will "automatically be deemed to have resigned, from all positions with the Company Group, including the Employee's position, if any, as a member of the Board or the board of directors of the Company or as an officer of any member of the Company Group." Dkt. 53-3 at 6. As noted, Company Group means Sprint Holdings, LLC and its direct and indirect subsidiaries. According to Plaintiffs, Massengale's promotion from a job at Sprint Safety to a job at affiliated Tidal Tank did not result in him losing all positions with the Company Group.. Thus, Plaintiffs argue, Massengale's switch from Sprint Safety to Tidal Tank could not constitute a "termination" that triggered the running of his competitive restrictions. This argument is a stretch. Massengale put it perfectly when he stated:

> Plaintiffs tilt at windmills. Section 7(c) obviously refers to positions held simultaneously as the terminated position, not those held subsequent to Mr. Massengale's position at Sprint Safety. This is evidenced by the direct references to Mr. Massengale's possible positions as a board member or as an officer of other Company Group companies. *See* Employment Agmt. at § 7(c). These are the types of positions that would have been held simultaneously with his position at Sprint Safety. Further, "resignation of all positions" provisions are commonplace in employment agreements where the employee may have held multiple positions across different subsidiary companies. *See, e.g.*, *OMNI Energy Servs. Corp. v. Rhyne*, 2014-251 (La. App. 3 Cir. 10/15/14), 150 So. 3d 509, 511, writ denied, 2015-0001 (La. 3/27/15), 162 So. 3d 387. Here, Mr. Massengale's employment by Tidal Tank occurred *following* his employment by, and termination from, Sprint Safety. He never held the two positions simultaneously. As a result, Mr. Massengale's termination from Sprint Safety did not result in his automatic resignation from Tidal Tank because he never held the two positions concurrently. Mr. Massengale's termination from Sprint Safety and subsequent employment from Tidal Tank is not in conflict with Section 7(c).

Dkt. 57 at 10–11.

Plaintiffs further rely on Section 7(b) of the Employment Agreement, which states that the provisions of the contract will "survive any termination of the Employee's employment . . . if necessary or desirable to accomplish the purposes of other surviving provisions," including Massengale's post-employment competitive restrictions. Dkt. 53-3 at 6. This provision provides no salvation for Plaintiffs. It just states the painfully obvious: the post-employment restrictive covenants will remain enforceable following Massengale's termination from Sprint Safety.

Plaintiffs also ask me to look at a separate agreement, the Unit Grant Agreement, to support their contractual interpretation of the Employment Agreement. Doing so, however, would be completely improper. When a written contract is complete and unambiguous, it is black letter law that the parol evidence rule bars admission of extrinsic evidence regarding prior or contemporaneous agreements. *See Nat'l. Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 521 (Tex. 1995).

**B.  SHOULD THE PLAIN LANGUAGE OF THE EMPLOYMENT AGREEMENT BE DISREGARDED BECAUSE IT ALLEGEDLY LEADS TO AN ABSURD RESULT?**

Citing the oft-cited maxim that contracts should be interpreted reasonably to avoid absurd results, Plaintiffs ask me to disregard the plain language of the Employment Agreement. In advancing this argument, Plaintiffs claim that Massengale's contractual interpretation would lead to an absurd result because "the Sprint family of companies would [lose] significant competitive protections." Dkt. 54 at 19.

This argument is too cute. The obvious impact of my contractual interpretation—and, more importantly, the plain language of the Employment Agreement—is that the

start date for Massengale's post-employment restrictions began on the date his employment with Sprint Safety terminated. Why is that an absurd result? Absurd means "utterly or obviously senseless, illogical, or untrue; contrary to all reason or common sense; laughably foolish or false." *See Absurd*, Dictionary.com, https://www.dictionary.com/browse/absurd (last visited July 20, 2020). I fully understand that my interpretation might not benefit the Sprint family of companies since they cannot now impose post-employment restrictions on Massengale, but can we really say this interpretation is "utterly or obviously senseless, illogical, or untrue; contrary to all reason or common sense; laughably foolish or false"? *Id.* I don't think so.

From my review of the summary judgment record before me, there is no reason for me to believe that Plaintiffs are unsophisticated or unfamiliar with how contractual documents operate. The parties struck a deal and the terms of that deal are expressed in the plain language found in the Employment Agreement. It is wholly improper for me to ignore the intentions of the parties as expressed in the writing itself under the pretext that the result is somehow unreasonable or unfair. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). Had the parties wanted to, they could have easily included clear, unambiguous language in the Employment Agreement specifying that the one-year, post-employment restrictions would not commence until Massengale's employment with "any of the Sprint family of companies" terminated. They did not do so. For whatever reason, the parties specified that the post-employment restrictions started when Massengale's employment with Sprint Safety terminated. I will respect the parties' choice of words, especially since I do not have the

11

authority to rewrite the Employment Agreement to mean something that it does not. *See Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 646 (Tex. 1996) ("We have long held that courts will not rewrite agreements to insert provisions parties could have included or to imply restraints for which they have not bargained"); *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003) ("[W]e may neither rewrite the parties' contract nor add to its language.").

## C. IS MASSENGALE ESTOPPED FROM SEEKING TO ENFORCE THE PLAIN LANGUAGE OF THE EMPLOYMENT AGREEMENT?

Plaintiffs next assert that Massengale should be estopped from arguing that the non-competition and non-solicitation provisions in the Employment Agreement are unenforceable because he "enjoyed the benefits of the promotion within the Sprint family of companies, . . . retained an ownership interest in Sprint[,] . . . and continued to receive confidential business information as well as an increased compensation package." Dkt. 54 at 22. I am not persuaded.

"Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken." *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 593 S.W.3d 324, 337 (Tex. 2020) (quoting *Lopez v. Muñoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000)). "The doctrine applies when 'it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit.'" *Id.* (quoting *Lopez*, 22 S.W.3d at 864).

Here, Massengale has not taken any position inconsistent with any benefits he received as part of his employment. He signed an Employment Agreement, and he is fully entitled to have that agreement enforced as it is written. Under Plaintiffs' cock-eyed theory, I should completely ignore the written agreement's directive that the restrictive covenants last one year from Massengale's termination simply because he went to work for an affiliated company. I will not do so. In my view, it would actually be unconscionable to arbitrarily extend the time period applicable to the restrictive covenants when the parties could have, but did not, make such allowances in the Employment Agreement.

### D.   ARE THERE ANY REMAINING FACT QUESTIONS?

Finally, Plaintiffs contend that even if I find the Employment Agreement unambiguous, genuine issues of material fact still remain about whether Massengale experienced a "termination from employment." This argument has no legs.

There is simply no factual dispute as to whether Massengale was terminated on August 31, 2016. In support of his Motion for Partial Summary Judgment, Massengale submitted a declaration expressly stating that his "employment with Sprint Safety was terminated" on August 31, 2016. Dkt. 53-1 at 2. Additionally, Massengale's summary judgment evidence includes W-2 forms, firmly establishing that he ceased being a Sprint Safety employee in 2016. Massengale received a W-2 form from Sprint Safety in 2016, and then again when he rejoined the company in 2018. Sprint Safety did not provide him a W-2 form in 2017.

Stuck between a rock and a hard place, Plaintiffs argue that there are fact issues with respect to "termination from employment" because Massengale retained an ownership interest in Sprint Safety, remained under the same employee benefits plan he was part of with Sprint Safety, and continued to report directly to Sprint Safety's Chief Executive Officer. None of these facts are in dispute, but they are completely immaterial as to whether Sprint Safety terminated Massengale's employment. Put another way, there is nothing inconsistent with Massengale's employment at Sprint Safety being terminated on August 31, 2016, and him continuing to retain an ownership in Sprint Safety, continuing to receive benefits under an employee benefits plan sponsored by the parent company, and continuing to report to Sprint Safety's Chief Executive Officer, who also served as the top executive at his new employer, Tidal Tank.

## CONCLUSION

For the reasons set forth above, I recommend that Defendant Justin Massengale's Motion for Partial Summary Judgment on Plaintiffs' Breach of Contract Claim (Dkt. 53) be **GRANTED** in terms of the December 31, 2008 Employment Agreement. To be clear, the breach of contract claim under the Unit Grant Agreement remains, and I offer no opinion at this time as to the merits of such a claim.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED in Houston, Texas, this 4th day of September, 2020.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE