United States District Court
Southern District of Texas
**ENTERED**
December 21, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TOTAL SAFETY U.S., INC, ET AL., § | |
| § | |
| Plaintiffs. § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:19–CV–03836 |
| § | |
| CODE RED SAFETY § | |
| & RENTAL, LLC, ET AL., § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND RECOMMENDATION

Before me is Defendant Justin Massengale's Motion for Partial Summary Judgment on Breach of Contract Claim Based on the Unit Grant Agreement. *See* Dkt. 115. After considering the motion, response, reply, and applicable law, I recommend that the motion be **GRANTED**.

## PROCEDURAL BACKGROUND

This is the second time I have entertained a motion for partial summary judgment filed by Justin Massengale on the breach of contract claim brought by Plaintiffs Sprint Safety, Inc., Total Safety U.S., Inc., and Total Safety On-Site Safety Services, Inc. When Massengale filed his first motion, the operative breach of contract claim was found in Plaintiffs' Second Amended Complaint. The Second Amended Complaint alleged that Massengale had violated the non-competition and non-solicitation provisions contained in a December 31, 2008, Employment Agreement. In seeking summary judgment on that breach of contract claim, Massengale argued that the Employment Agreement's one-year

non-competition and non-solicitation provisions had expired, no longer precluding him from competing against his former employer. Agreeing with Massengale, I issued a Memorandum and Recommendation, which was adopted in full, explaining why the breach of contract claim based on the Employment Agreement should be dismissed as a matter of law. *See Total Safety U.S., Inc. v. Code Red Safety & Rental, LLC*, No. 4:19-CV-03836, 2020 WL 5775826 (S.D. Tex. Sept. 4, 2020).

While the first motion was pending, Plaintiffs filed a Third Amended Complaint. The Third Amended Complaint added a new breach of contract claim, alleging that a Unit Grant Agreement "created independent non-competition and non-solicitation obligations." Dkt. 69 at 11 n.4. I was careful in my Memorandum and Recommendation to note that I was only opining on the validity of the breach of contract claim under the Employment Agreement and was not offering an opinion on the breach of contract claim under the Unit Grant Agreement. *See Total Safety U.S.*, 2020 WL 5775826, at *7.

Massengale has now moved for summary judgment on the breach of contract claim based on the Unit Grant Agreement.

## FACTUAL BACKGROUND

Massengale began working for Sprint Safety, Inc. ("Sprint Safety") in 2005. Approximately three years later, on December 31, 2008, Massengale entered into two agreements that form the basis of Sprint Safety's breach of contract claims. The first agreement was an Employment Agreement between Massengale and Sprint Safety. The Employment Agreement provided that Sprint Safety would employ Massengale on a full-time basis as a sales representative. The Employment Agreement also addressed various

other employment-related issues such as base salary, bonus compensation, participation in an employee benefit plan, vacations, and non-competition obligations.

The Employment Agreement contains restrictive covenants governing Massengale's post-employment activities. Section 5(c) of the Employment Agreement contains one-year, post-employment non-competition and non-solicitation provisions. The non-competition provision provides as follows:

> (i) For the period beginning on [December 31, 2008] and ending one (1) year following the date of the Employee's termination from employment (the "Restricted Period"), the Employee will not engage in Competition in the Territory . . . .

Dkt. 53-3 at 4. "Competition" is defined by the Employment Agreement as "to directly or indirectly, without the prior written consent of [Sprint Safety], form, acquire, finance, operate, control, advise, invest in or otherwise become engaged in or employed by a Competing Business." *Id.* at 7. "Territory" is defined by the Employment Agreement as "a thirty (30) mile radius of Baytown metropolitan area and a one (1) mile radius of each customer to which Employee has provided services within the last year, even if said customers are outside the thirty (30) mile radius." *Id.*

The non-solicitation provision in the Employment Agreement also restricts Massengale's activities for one year following the date of his termination from Sprint Safety:

> (ii) During the Restricted Period, the Employee will not directly or indirectly, and will not assist directly or indirectly any other Person to (A) hire or engage in any capacity any employee of any member of the Company Group (or any Person who was an employee of any member of the Company Group within twelve (12) months of the date such hiring or engagement occurs) or solicit or attempt to induce any employee of any members of the Company Group

3

>to discontinue such employment for the benefit of any other Person, (B) solicit or attempt to induce any customer of any member of the Company Group or independent contractor providing services to any member of the Company Group to terminate or diminish its relationship with them, or (C) seek to persuade any customer or supplier of any member of the Company Group (or any Person who was a customer or supplier of any member of the Company Group within twelve (12) months of the date such solicitation or encouragement commences or occurs, as the case may be) or prospective customer or supplier of any member of the Company Group to conduct any business or activities with any Competing Business.

*Id.* at 4. "Company Group" is defined by the Employment Agreement to include "Sprint Holdings, LLC, and its direct and indirect Subsidiaries." *Id.* at 7.

The second agreement Massengale entered into on December 31, 2008 was a Unit Grant Agreement with Sprint Holdings, LLC ("Sprint Holdings").[1] Under this agreement, Sprint Holdings granted Massengale 25 Class D Units of limited liability company interest in Sprint Holdings. The Unit Grant Agreement noted that Massengale was an employee of Sprint Holdings or one of its subsidiaries. It is undisputed that when Massengale entered into the Unit Grant Agreement, he worked for Sprint Safety, a subsidiary of Sprint Holdings. Sprint Holdings never directly employed Massengale.

Important to the pending motion for partial summary judgment, the Unit Grant Agreement fully incorporated Section 5 of the Employment Agreement: "The provisions of Section 5 of [Massengale's] Employment Agreement regarding Confidential

---

[1] Sprint Holdings is not a party to this lawsuit. At oral argument, Plaintiffs stated they are bringing the breach of contract claim under the Unit Grant Agreement as a third-party beneficiary. Massengale indicated that he does not believe Plaintiffs enjoy third-party beneficiary status. Either way, that issue has not been briefed and is not presently before me.

4

Information and Restricted Activities are herein incorporated by reference." Dkt. 122-1 at 3.

Massengale's employment with Sprint Safety terminated on August 31, 2016. The very next day, Massengale began working for Tidal Tank, Inc. ("Tidal Tank"), another subsidiary of Sprint Holdings. Massengale left Tidal Tank on December 31, 2017, and went back to work at Sprint Safety from January 1, 2018, until his termination on June 30, 2019.

Plaintiffs claim that Massengale breached the post-employment restrictive covenants incorporated in the Unit Grant Agreement by working for purported competitors of Sprint Safety and soliciting Sprint Safety's customers. Massengale seeks summary judgment on the breach of contract claim, arguing that "[t]he restrictive covenants contained in the [Unit Grant Agreement] are identical to those in the Employment Agreement, which this Court has already ruled expired." Dkt. 115 at 1.

## LEGAL STANDARDS

### A. SUMMARY JUDGMENT

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). "A material fact is one that might affect the outcome of the suit under governing law, and a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (quotations omitted).

"A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments LLC*, 914 F.3d 940, 946 (5th Cir. 2019) (quotation omitted). In deciding a summary judgment motion, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor." *Waste Mgmt. of La. LLC v. River Birch, Inc.*, 920 F.3d 958, 972 (5th Cir. 2019) (cleaned up).

**B.     CONTRACT INTERPRETATION**

Before going further, I provide the same short refresher on the basic canons of contract interpretation discussed in my previous Memorandum and Recommendation.

A court's "primary objective" in construing a contract "is to ascertain and give effect to the parties' intent as expressed by the words they chose to effectuate their agreement." *In re Deepwater Horizon*, 470 S.W.3d 452, 464 (Tex. 2015). This basic principle advances Texas's "strong public policy in favor of preserving the freedom of contract" by allowing parties to "prescribe[] particular remedies or impose[] particular obligations" as they choose. *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 648–49 (Tex. 2007) (quotation omitted).

As the Texas Supreme Court explained more than a century ago, "where the language is plain and unambiguous, courts must enforce the contract as made by the parties, and cannot make a new contract for them, nor change that which they have made under the guise of construction." *E. Tex. Fire Ins. Co. v. Kempner*, 27 S.W. 122, 122 (Tex. 1894). "A contract is unambiguous if it can be given a definite or certain legal meaning. On the other hand, if the contract is subject to two or more reasonable interpretations . . . the contract is ambiguous." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)

6

(citation omitted). "Courts interpreting unambiguous contracts are confined to the four corners of the document, and cannot look to extrinsic evidence to create an ambiguity." *Texas v. Am. Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006). Only where a contract is first determined to be ambiguous may a court consider the parties' interpretations and admit extrinsic evidence. *See URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 764–65 (Tex. 2018). "Whether a contract is ambiguous is a question of law." *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983).

## ANALYSIS

In my previous Memorandum and Recommendation, I held that the non-competition and non-solicitation obligations contained in Section 5 of the Employment Agreement expired on September 1, 2017, one year following Massengale's termination from Sprint Safety. I agree with Massengale that the Unit Grant Agreement "incorporated by reference the Employment Agreement's restrictive covenants without altering the meaning of any term or definition." Dkt. 115 at 1. As before, I conclude that those restrictive covenants began to run following Massengale's termination from Sprint Safety in 2016 and expired one year later, on September 1, 2017. "Given that the analysis of the [Unit Grant Agreement's post-employment restrictive covenants] mirrors the analysis applicable to the provisions in the Employment Agreement in every respect," I fully incorporate my previous Memorandum and Recommendation here. *Id.* at 1–2. The restrictive covenants expired on September 1, 2017, and are thus unenforceable.

Because the Unit Grant Agreement was executed by Massengale and Sprint Holdings, the parent company of Sprint Safety and Tidal Tank, Plaintiffs argue the post-

7

employment restrictive covenants did not begin to run until Massengale's relationship with the Sprint Holdings' family of companies ended. Since Massengale worked continuously for a Sprint Holdings subsidiary from 2005 through June 30, 2019 (going back and forth between Sprint Safety and Tidal Tank), Plaintiffs maintain the post-employment competitive restrictions did not begin to run until June 30, 2019. Although creative, Plaintiffs' argument quickly crumbles when analyzed.

To restate the obvious, the Unit Grant Agreement incorporates, without any changes at all, the entire restrictive covenant section from the Employment Agreement. The result is that the post-employment restriction language in both agreements is the same. Identical. Indistinguishable. Alike. No different. Plaintiffs' underlying theory in this case is based on the flawed premise that the restrictive language in the Employment Agreement means one thing (the Restricted Period begins to run upon Massengale's termination from employment with Sprint Safety) while the identical language contained in the Unit Grant Agreement means something entirely different (the Restricted Period begins to run upon Massengale's severance of all ties with the Sprint Holdings' family of companies). This contractual interpretation defies common-sense and basic logic. *See Aerojet-General Corp. v. Askew*, 511 F.2d 717, 722 (5th Cir. 1975) ("It is elementary contract law . . . that a contract should not be construed to yield absurd results."). More fundamentally, the Unit Grant Agreement expressly instructs the parties against interpreting it and the Employment Agreement differently. Section 6(a) of the Unit Grant Agreement provides: "In the event of any conflicts between the provisions of this Agreement and the provisions of the Employment Agreement, the provisions of the Employment Agreement shall govern and

8

control." Dkt. 122-1 at 4. Section 6(a) makes it impossible to interpret the *identical* provision in the Unit Grant Agreement and the Employment Agreement differently.

On a separate note, Plaintiffs argue that Massengale should be estopped from asserting that the Unit Grant Agreement's restrictive covenants no longer apply to him because he "enjoyed the benefits of an ownership interest in the Sprint Holdings['] family of companies," accessed "those companies' confidential information," and "enjoyed the benefits of the Unit Grant Agreement without interruption" until the time of his termination. Dkt. 122 at 7. I rejected this identical argument previously and there is nothing new or different this time around. *See Total Safety U.S.*, 2020 WL 5775826, at *6. The quasi-estoppel "doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 593 S.W.3d 324, 337 (Tex. 2020) (quotation omitted). Here, there is no summary judgment evidence that Massengale has taken a prior inconsistent position or accepted any benefits premised on the continued enforceability of the noncompetition and non-solicitation provisions. The language in the Unit Grant Agreement, as it was in the Employment Agreement, is plain and unambiguous. That language should be respected and enforced.

***

In short, I previously concluded that the post-employment restrictions contained in the Employment Agreement commenced when Massengale's employment with Sprint Safety terminated. "[I] meant what [I] said, and [I] said what [I] meant." *Automation*

*Support, Inc. v. Humble Design, LLC*, ---F.3d---, 2020 WL 7213492, at *2 (5th Cir. Dec. 8, 2020) (Costa, J.) (quoting DR. SEUSS, HORTON HATCHES THE EGG (1940)).[2]  When the identical contractual language is incorporated without change into the Unit Grant Agreement, the result is, not surprisingly, the same.  Massengale is entitled to summary judgment on the breach of contract claim based on the Unit Grant Agreement.

## CONCLUSION

For the reasons set forth above, I recommend that Defendant Justin Massengale's Motion for Partial Summary Judgment on Breach of Contract Claim Based on the Unit Grant Agreement (Dkt. 115) be **GRANTED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 21st day of December 2020.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

[2] Interestingly, Dr. Seuss, Judge Costa, and I all have at least one thing in common: we are all graduates of Dartmouth College.